Lippincott v. Wikoff.

---

CARRIE LIPPINCOTT et al.

v.

EDWARD H. WIKOFF et al.

1. Under *Rev. p. 378 § 5*, making the husband or wife of any party interested in a suit a competent witness, and compelling them to give evidence on behalf of any party to the suit, a husband may subscribe as witness a will under which his wife takes as devisee.

2. An appointment of the husband of a devisee as executor does not disqualify him to attest the will as subscribing witness, under *Rev.* p. *1244 § 4,* disqualifying as a subscribing witness a devisee, or one beneficially interested under the will.

3. On the disqualification of one of several executors, on whom, in their official capacity, and not as individuals, is conferred a joint power of sale, those remaining may execute the power.

4. The appointment of the wife as executrix does not, *ipso facto,* make her husband a co-executor, so that his disqualification to act as such will disqualify her to act alone.

5. Where a husband and wife are appointed joint executors with power of sale of realty, and the husband is disqualified from acting by being a subscribing witness to the will appointing them, the wife may execute the power of sale alone by deed in which her husband joins.

6. In an action for specific performance of a contract for the purchase of land from the executors, the defence of unmerchantableness of title in that, under the statute, the will was void, and no power of sale conferred on the executors, cannot prevail where the statute is so clear as to leave no doubt of its construction in favor of the validity of the will and of the power.

On bill for specific performance.

*Mr. George Berdine,* for the complainants.

*Mr. John S. Voorhees,* for the defendant Wikoff.

EMERY, V. C.

This is a bill for the specific performance of a contract for the sale of real estate, and the question to be solved is whether the title of the vendors tendered under the contract is such a title as the court will compel the purchaser to accept.   The bill is filed by the vendors, Frank P. Lippincott, as executor, and Carrie Lippincott, his wife, as executrix of Margaret Runyon, and they have, as such executors, made a contract in writing with the defendant Wikoff for the sale of lands of which the testatrix died seized, acting under a power of sale conferred or supposed to be conferred upon them by the will.

The purchaser raises questions as to the legal execution of the will and also as to the existence in the complainants, as executors, of any power of sale under the will, and insists that, as to

one or both of these questions, such doubt exists that the title is, not such a good and merchantable title as should be forced upon. him.   The questions as to the validity of the will must be first considered, and they arise as follows :.

The complainant Carrie Lippincott, who is one of the two, children and heirs-at-law of the testatrix, besides being appointed executrix, is one of the devisees and legatees under the will, and. her husband, Frank P. Lippincott, the other executor, is one of the two witnesses to the will.   He alone proved the will before the surrogate, and on this probate letters testamentary were issued to him and his wife.   The defendant contends that Frank, P. Lippincott was an incompetent witness to the execution of the will, and that there not being two competent witnesses, the, instrument was invalid as conveying any title to the real estate of the testatrix.   The objection to his competency as a witness is that he is the husband of Carrie Lippincott, who is one of the devisees and legatees under the will.   At the common law, and in the absence of express statute, he could not be a competent witness to a will in which his wife was so interested, and the question is whether, by section 5 of the "Act concerning evidence." (*Rev. p. 378*), this objection is removed.

This section relating to evidence reads :

."In any trial or inquiry in any suit, action or proceeding in any court or before any person having, by law or consent of parties, authority to examine witnesses or hear ·evidence, the husband or wife of any person interested therein as a party or otherwise shall be competent and compellable to give evidence the same as other witnesses, on behalf of any party to such suit, action or proceeding" &c.,

with certain exceptions relating to criminal action and proceedings for divorce and confidential communications.   This broad and comprehensive statute was passed March 17th, 1870, after the decisions of our courts under previous statutes, refusing to extend the competency of husband and wife beyond the express letter of these statutes (*Bird* v. *Davis, 1 McCart. 467;* *Handlong* y. *Barnes, 1 Vr. 69;* *Cross* v. *Cross, 2 C. E. Gr. 288*), holding that the act relieving the incompetency of parties did not apply, and *Van Houten's Executors* v. *Post, 6 C. E. Gr. 355,*

holding that the act of 1868, providing for competency in a suit against her, did not apply to a suit by her. The present act of 1870 was then passed, and, in its broad and comprehensive form, this section seems to me clearly to reach a proceeding in the orphans court or before the surrogate for the probate of this will, and to make the husband a competent witness in any proceeding in any court to prove this will, notwithstanding the fact that his wife is interested as a devisee or legatee under the will. So far as this objection goes, my opinion is in favor of the title.

The next question is whether, if the will be a valid will, the executors have a power of sale thereunder. The purchaser's contention on this point is, first, that by the express provision of section 4 of the Wills act, the appointment as executor is made null and void by his becoming a witness; and, second, that where a married woman is appointed executrix, the husband becomes, *ipso facto*, an executor with her; and if his appointment as executor is expressly made void by statute, the wife's appointment as executrix must also fall with that of the husband, and neither of them can be executors of the will or execute the power of sale.

First, as to the effect of the fourth section of the statute relating to wills. *Rev. p. 1244.* This section provides

"that if any beneficial devise, legacy, estate, interest, gift or appointment of or affecting any real or personal estate, other than charges on lands for the payment of debts is given by the will, the devise, legacy, estate, interest, gift or appointment shall be void, so far only as concerns the subscribing witness, but the person to whom the devise or appointment is made shall be admissible as a witness."

Upon the question whether the appointment as executor comes within the terms of the section which relates to "a beneficial devise, legacy, estate, interest, gift or *appointment of or affecting any real or personal estate*," I think that it does not. My reason is that the "appointment" contemplated by this section seems to be an appointment which is expressly made by the will to affect some real or personal estate which the testator devises or bequeaths, or over which he has a power of appointment which he proposes to exercise by will. It must be noted that this section

4 was a part of the Wills act of November 16th, 1795 (*Pat. L. p. 189; Rev. L. p. 223*), by the twelfth section of which it was provided that personal estate might be disposed of by last will in writing, in the same manner as before the passage of the act. Now, at the time of the passage of this act, only wills of real estate, by the statute then in force (act of March 17th, 1713–14), were required to be attested by witnesses, and wills of personal estate were valid as at common law, without witnesses. It was not until the act of March 12th, 1851 (*Rev. p. 1247*), that witnesses were required to wills of personal as well as of real estate. In view of this subsequent section of the act of 1795, and of the state of the law then existing, it seems highly improbable that by the appointment referred to in the fourth section should be intended an appointment as executor who, as such, administered solely on the personal estate.

At common law, an executor, who was not a residuary legatee and had no beneficial interest in the estate, might be a witness to prove the execution of the will and the sanity of the testator, being considered a mere trustee and nominal party, having no real interest in the contest (*Sears* v. *Dillingham, 12 Mass. 358*), and that this was the common law is declared in *Snedekers* v. *Allen, 1 Penn. 33*. Mr. Justice Pennington says that an executor may be a witness to establish a will, unless he takes an interest under it, and that the practice in this state of allowing a reasonable compensation for services did not alter the case.

These considerations lead me to the conclusion that this appointment as executor was not the beneficial "appointment of or affecting any real or personal estate" intended by this statute to be made void. But even admitting that there is a doubt upon this point, and conceding that the appointment of the husband as executor comes within this section and was invalid, the effect of this was to leave the wife the sole executrix. I am satisfied, from an examination of the authorities, that the effect of her appointment as sole legal executrix was not, as defendant's counsel contend, to make the husband, *ipso facto*, executor with her of the estate. If this were the result, then the wife's appointment, it seems to me, would also be invalid, as otherwise, the

statute expressly declaring the invalidity of the husband's appointment, and which is applicable to all cases, would be circumvented and nullified as to this case.

As to the precise *status* of the husband of a woman who is appointed executrix, the authorities show that a married woman may be appointed executrix, but cannot accept the office against the consent of the husband, for the reason that the wife, at common law, can do no act which may prejudice the husband without his consent (*1 Wms. Ex. 233*), and, as the husband of the executrix, the law also gave him the power of disposition over the personal estate and required him to join with her in the bringing of suits. *2 Wms. Ex. 966, 967.* But his power and rights throughout were those of a husband and not those of an executor in his own right, and on his decease the wife's power as executrix continued. As to his liabilities as husband, Sir John Romilly, in *Smith* v. *Smith, 21 Beav. 385, 387,* says : " It is settled that a husband is liable for all the assets received or devastavits committed either by himself or his wife during the coverture, in respect of an estate of which his wife was personal legal representative ; " and Lord Turner, in *Soady* v. *Turnbull, L. R. 1 Ch. App. 493, 498,* adopting the language of Sir E. Vaughan Williams, says : " That the wife having become executrix was her own act ; that the legal consequence of that act was to confer authority upon her husband to deal with all the assets of the testator, and that it follows that all his acts under them must be regarded as done under her authority, and that she is consequently responsible for them as executrix." It is evident from these authorities that the wife still continues in law as the sole executrix, and that the husband's dealings with the estate are considered not those of an executor in his own right, but as the acts of the executrix. The expressions to the effect that, by the marriage, the husband becomes, *ipso facto*, executor in his own right, made in the cases relied on by counsel, were made in cases in which only the questions of the husband's liability for the acts of himself or his wife were involved. As to this liability there was no doubt, but the question as to whether the liability arose as executor or as husband of an executrix was not involved or considered in either of the cases.

And considering also that the right of the husband of the executrix, as husband, to deal with the assets extended only to the personal estate, I think it is clear that a power to sell real estate, given to a married woman as executrix, cannot be considered as, *ipso facto*, conferring a power of sale on him as co-executor with her. It may be necessary for him to join in the execution of the deed executing her power, as well as in the agreement of sale, under our statute relating to conveyances by married women (*Rev. p. 154 § 9*), but, independent of statute, the concurrence of the husband was not necessary for the execution of a power by a married woman. *1 Sug. Pow. 182.*

The further objection is made that the power of sale was given jointly to the executors, and that it cannot be exercised by the wife as sole executrix, but must be exercised by both together as executors. The clause directing the sale and appointing the executors, is as follows:

"*Third.* After the above directions are carried out, I request that my executors whenever they may deem proper to sell my Real and Personal property and divide the same between my son George J. Runyon and my daughter, Carrie Lippincott. I direct that if there remains anything that it shall be given to Lewis Lippincott. It being my desire however, that the Executors shall have full power to determine when the Real Estate shall be sold.

"*Fourth.* I hereby appoint Frank P. Lippincott Executor and Carrie Lippincott Executrix of this my last will."

The power of sale having been given to the executors in their official capacity, and not by name, as individuals, the invalidity of the subsequent appointment of one of the executors named brings the case within the rule laid down in *Weimer* v. *Fath, 14 Vr. 1 (Supreme Court)*, approved in *Denton* v. *Clark, 9 Stew. Eq. 534 (Errors and Appeals, 1883)*. Those cases decided that on the removal of one of two or more joint executors, the power can be executed by the remaining executor. It is true that in both these cases the provisions of the Orphans Court act, section 129, relate to the powers of the successor of an executor who has been removed; but the law, independent of these statutes, was collated and examined at length by Chief-Justice Beasley, in *Weimer* v. *Fath, supra,* and the principle deduced from all of

Lippincott v. Wikoff.

the authorities, that where the power is given to executors in their official capacity, and not as individuals, by name, it may be executed by the remaining executors in case of the death, removal or refusal to act of the other.

If, therefore, the husband's appointment as executor be void under the fourth section of the statute of wills, the effect of this, I conclude, would be to leave the wife the sole executrix, who could execute the power by a deed in which her husband joined, as required by our statute of conveyances. And, if the husband's appointment be not void under the act, then both husband and wife together may execute the power. There can be no objection, I think, to the execution of the deed by both husband and wife, for this purpose, and upon this question, also, my opinion is in favor of the title.

The important question remains whether, notwithstanding my opinion is in favor of the title, on both the points, there has been such doubt raised as will make it inequitable to require the purchaser to take the title. The general rule relating to the subject is expressed in the terms that the title which a court of equity will compel a purchaser to take must be a merchantable title. Doubts as to a title evidently may arise under different circumstances and involve different classes of questions. The doubt may arise by reason ·of the existence or non-existence of facts involved in the title, or may involve, as here, a question of general law, or the construction of a statute or of the terms of a will or other instrument, and I think an examination of the decisions in our own courts and elsewhere will show that there is no invariable rule which can be applied to all classes of cases. In cases where the doubt in relation to title is one of fact, which the court is called on to consider, the general rule has been declared to be that the court will never compel a purchaser to take a title where the point on which it depends is too doubtful to be settled without litigation, or where the purchase would expose him to the hazard of such proceedings. *Dobbs* v. *Norcross, 9 C. E. Gr. 327* (*Chancellor Runyon, 1874*); *Tillottson* v. *Gesner, 6 Stew. Eq. 313, 327* (*Errors and Appeals, 1880*), and *Cornell* v. *Andrews, 8 Stew. Eq. 7* (*Chancellor Runyon, 1882*), were

cases in which the validity of the title depended on whether cer-
tain facts existed, and the court held that there was sufficient
doubt to put the purchaser in hazard of litigation and he would
not be compelled to take the title.  On the other hand, where
the doubt raised involves a question of general law, as to which
the courts of equity often or specially have direct jurisdiction—
*e. g.*, the power of executors or trustees to sell—our courts of
equity, both below and on appeal, have in some cases adopted
the practice of settling in the suit for specific performance the
question of the power and of directing the title to be taken if the
decision be in favor of the power.  In *Clark* v. *Denton, 9 Stew.
Eq. 419* (affirmed on appeal, *9 Stew. Eq. 534*), the question of
the existence of the power and of the validity of its execution
were both involved, and were decided, and specific performance
was decreed without discussion of the question as to whether
any doubt existed sufficient to prevent this relief.  In *Cruik-
shank* v. *Parker, 6 Dick. Ch. Rep. 21 (1893)*, on a bill for
specific performance which involved the question of the power
of a trustee to sell, Chancellor McGill decided against the valid-
ity of the power, and, on this question of doubt as to the title,
said that the objection was a serious one, which rose above mere
speculation, theory and possibility, and hence fairly stood in the
way of free alienation of the land in question, and the title,
therefore, should not be forced on the defendant, especially in
the absence of parties to be bound by the decree.  On appeal,
however, the court of errors and appeals took a different view as
to the existence of the power in the trustee, declaring that the
power to sell was clear, and compelling the purchaser to take
the title.  *Cruikshank* v. *Parker, 7 Dick. Ch. Rep. 310 (1894)*.
Nor did the court of appeals discuss at all the question as to
imposing a doubtful title on the purchaser.  Where, therefore,
a question of the power of executors or trustees to sell under a
will is involved, the cases as decided by the court of errors and
appeals establish the rule that, where the power to sell seems
clear, the court should decide the question of power and should
direct the title to be taken over this objection.  A distinction in
reference to this class of cases may arise from the fact that the

construction of wills, in reference to the powers of executors or trustees, is a settled branch of equity jurisdiction, and although such construction is usually made on bill filed for that special purpose, bringing all parties interested before the court, yet the question of the power may often be as well and thoroughly examined and settled in a suit involving directly, as here, the interests in favor of and against the exercise of the power. In *Chambers* v. *Tulane, 1 Stock. 146 (1852)*, the opinion of Chancellor Williamson was against the existence of the power and specific performance was denied.

My opinion as to the validity of the power of sale under the will being clear, for the reasons above stated, I should, on the authority of the above cases, and so far as this objection is concerned, feel justified in requiring the purchaser to take the title.

When the doubt as to the title is claimed to arise by reason of the questions raised as to the validity of the will itself, as an instrument divesting the title of heirs, the question must be solved without the aid of direct authority of our own courts. The two heirs-at-law are both made parties to this suit, one of them being the complainant Carrie Lippincott and the other her brother, George J. Runyon, but the latter has been brought in as an absent defendant; and, inasmuch as the right to compel him to settle his title as heir-at-law in this suit for the specific performance of a contract to which he was not a party is very doubtful, I should feel obliged to consider the question as if he were not made a party to the suit. The question as to the kind of doubt upon a question of general law which will make a title unmerchantable has been, of late, much discussed in English cases, and a statement of these will throw much light upon the question. The leading case is that of *Pyrke* v. *Waddingham, 10 Hare 1 (44 Eng. Ch.)*, in which Vice-Chancellor Turner, stating that it has been for a long time the settled rule of the courts of equity not to compel a purchaser to accept a doubtful title, examined the question as to what titles are to be considered as doubtful within the rule, and whether the rule applies only in cases in which the court itself entertains doubts upon the title, or whether it extended to cases in which, although the court itself

Lippincott *v.* Wikoff.

may entertain an opinion in favor of the title, it is satisfied that that opinion may fairly and reasonably be questioned by other competent persons. He concludes that the cases show that it is the duty of the court not to have regard to its own opinion only, but to take into account what the opinion of other competent persons may be. As to the scale by which the courts are to be guided in measuring their doubts under this rule, he says, also (at *p. 8*), that the cases throw some light upon this question; that if the doubts were upon a question connected with the general law, the court is to judge whether the general law upon the point is or is not settled, enforcing specific performance in the one case and refusing to enforce it in the other. If the doubts arise upon the construction of particular instruments, and the court is itself doubtful upon the points, specific performance must be refused, and even though the court may lean in favor of the title, its duty is either to consider whether it would trust its own money upon the title or, at least, to weigh whether the doubt is so reasonable and fair that the property would be left in the purchaser's hands not marketable. If the doubts which arise may be affected by extrinsic circumstances, which neither the purchaser nor the court has the means of satisfactorily investigating, specific performance is to be refused. He also says (at *p. 10 &c.*) that, although the court's opinion is in favor of the title, a purchaser is not necessarily to be compelled to accept it, and that he thought each case must depend on the nature of the objection and the weight which the court might be disposed to attach to it; that it must be borne in mind that the exercise of the jurisdiction by specific performance is discretionary, and that the court has no means of binding the question as against adverse claimants, or of indemnifying the purchaser, if its own opinion should ultimately turn out not to be well founded. Applying these principles to the case in hand, in which the question of title depended upon the construction of a particular will, and not upon any general principle of law, he declared his own opinion to be in favor of the title, but, being unable to base that opinion upon any general rule of law, or upon any reasoning so conclusive as to fully satisfy his mind that other

competent persons might not entertain a different opinion, or
that the purchaser, if compelled to take the title, might not be
exposed to substantial and not merely idle litigation, or even that
he would be free from all possible hazard, he declined to order
a specific performance. So far as relates to doubtful questions
of general law, the doctrine of this case has, I think, been un-
doubtedly qualified by the later case of *Alexander* v. *Mills, L.
R. 6 Ch. App. 124 (1870)*, in which Sir William James, lord-
justice, delivering the opinion of the court of appeal upon a
disputed title involving a question of general law, said (at *p.
131*), "that as a general and almost universal rule the court
is bound as much between vendor and purchaser, as in every
other case, to ascertain and determine as it best may, what the
law is, and to take that to be the law which it has so ascertained
and determined, and that the exceptions to this rule will prob-
ably be found to consist, not in pure questions of legal principle,
but in cases where the difficulty and the doubt arise in ascer-
taining the true construction and legal operation of some ill-
expressed and inartificial instrument." The court considered
the question of law involved, and reached a conclusion different
from that of the master of the rolls, and directed the title to be
taken.

As to this decision in *Alexander* v. *Mills*, and its effect upon
the previous decision of *Pyrke* v. *Waddingham*, Lord Selbourne,
in *Palmer* v. *Locke, 18 Ch. Div. 381 (Court of Appeals, 1881)*,
says (at *p. 388*), that there are many cases in which it is necessary
and proper to say positively and finally (in a suit for specific per-
formance) that the law is one way or the other on the point
argued; but when you have a question raised upon the con-
struction of a general statute, if there is any reasonable ground
for saying that that question is not determined by previous
authorities, or that the previous authorities are conflicting, then,
in the terms of Lord-Justice Turner's judgment in *Pyrke* v.
*Waddingham*, that cannot be treated as a question of general
law so settled as to exclude that kind of question which the
court has paid regard to when it sees there is a doubtful question
of title which cannot be forced upon a purchaser. He further

Lippincott *v.* Wikoff.

said it is not at all necessary to inquire whether the case of *Alexander* v. *Mills* did or did not overrule some previous decisions which might have intended to draw a line as to what was or was not a title to be forced upon a purchaser more strictly than it was drawn in *Alexander* v. *Mills,* but that he did not understand that the general doctrine, as laid down by a long series of decisions of judges of the greatest eminence, and determined before *Pyrke* v. *Waddingham,* and which was explained in that case, has been displaced by subsequent authorities. When the court finds, he added, according to the principles explained in that case, that there is a question open to doubts of the kind there mentioned, and that a title ought not to be forced upon the purchaser, it is neither necessary nor generally convenient or desirable that the court, whatever may be the opinion it has formed upon the question and on the materials presented on a suit for specific performance, should think that that should conclude all questions as against persons who are not before it. The case then in hand involved at least one doubtful question of fact, viz., whether a certain notice had been received, and the court of appeal held that the doubt was so serious that they would not compel the purchaser to take title.

In *Re Thackeray and Young* (contract), the latest case I have found (*40 Ch. Div. 34 (1888)*), the question was whether a certain transaction between landowner and a railway company was an absolute sale and disposition of the lands, within the meaning of the Lands Clauses Consolidation act. After stating this to be the question, Mr. Justice Chitty says: "I take it as a general principle of law, with regard to specific performance, that the court does decide in general matters of law about which there cannot be fairly said to be any judicial doubt. In regard to this question, which of late has undergone a good deal of consideration as to titles which the court will or will not force upon a purchaser, it has been laid down by Lord-Justice James, in *Alexander* v. *Mills,* that with regard to general matters of law, including the construction of a general act of parliament, the right course for the court is to decide the question. But, then, I think it must appear, to the judge who decides it, that there were no decisions or *dicta* of weight which show that another

judge or another court having the question before it might come to a different conclusion. The court, I take it, must feel such confidence in its own opinion as to be satisfied that another court would not adopt another conclusion." In this case, Mr. Justice Chitty held that the question of the construction of the statute was, by reason of the *dicta* of Sir George Jessel and Sir James Hanner, in the decision of previous cases, left in such a state of doubt, that, although it was the question of the construction of a general act of parliament, he could not say with the certainty which was required of him to say that no other court would come to a different conclusion.

These decisions of Lord Selbourne and Mr. Justice Chitty qualify, to some extent, the broad doctrine laid down in *Alexander* v. *Mills,* that, with regard to general principles of law, including the construction of a general statute, it is the duty of the court to decide it on a suit for specific performanre, and the doctrine as thus qualified is that specific performance should not be decreed if there is reasonable ground for saying that the question is not settled by previous authorities, or if there are decisions or *dicta* of weight which show that another judge or another court having the question before it might come to a different conclusion. This rule is, as it seems to me, sufficiently favorable for the protection of the purchaser, and it is equitable to apply it in the present case. In this case the question of the validity of the will must be fairly considered as so settled a question as to justify the court in directing the title to be taken. There is no decision, it is true, settling the construction of the statute, but its language is so clear that I do not consider that a doubt has been thrown upon its application. It is a question purely of statutory construction, and the decisions of other courts, cited by counsel in his brief, are based either on the common-law *status* of husband and wife or on statutes which expressly exclude the husband from attesting a will in which his wife is interested. The doubt as to the title must, as was said by Vice-Chancellor Dodd, in *Vreeland* v. *Blauvelt, 8 C. E. Gr. 483,* be put upon some debatable grounds. They do not seem to exist in reference to the construction of this statute; and I therefore advise that specific performance be decreed.